UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br>  v.<br>TIMOTHY JEFFREY,<br>  Defendant. | No. CR 24-00475 WHA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |

**INTRODUCTION**

In this Section 922(g)(1) prosecution, defendant moves to suppress evidence obtained by police as a result of his capture. For the reasons stated below, the motion is **DENIED**.

**STATEMENT**

On April 19, 2023, M.H. called the police in Pittsburg, California, to report that her new Range Rover had been stolen by defendant Timothy Jeffrey. She stated that she gave defendant consent to drive her car two days prior, but defendant then failed to return it. The officer on the line told her to make an effort to get the car back and suggested that defendant must be in possession of the vehicle for "an extensive amount of time 10-15 days showing that he is willfully and intentionally depriving her of her vehicle" before the Pittsburg PD "can

deem it stolen" (Dkt. No. 22-1 at 5). He flagged the matter as a "civil" dispute. The reporting officer was wrong: there is no such "waiting period" policy at the Pittsburg PD (Dkt. No. 22-1 at 2). That officer then called defendant's phone and left him a voicemail about M.H.'s car. M.H. called the Pittsburg PD four more times that day, at 8:23 AM, 8:43 AM, 5:28 PM, and 9:39 PM, upset that the police had decided to contact defendant about the car and "afraid [defendant] is going to do something to her because he's dangerous" (Dkt. No. 22-1 at 6, 7).

The next day, M.H. and her father, D.H., went to the police station in person to report the vehicle stolen. D. H. had recently purchased the vehicle for his daughter: He was the registered owner, while M.H. was its primary user. Corporal Nicole Riddick and Officer Dakota Sears took their report. M.H. stated that on April 16, defendant asked her for the keys to her Range Rover. When she refused, defendant brandished a pistol and forced her to hand the keys over. M.H. asked defendant to return the car several times after he left but was told to "fuck off" (Dkt. No. 17-1 at 8).

Corporal Riddick entered the Range Rover into the Pittsburg PD's "Stolen Vehicle System" (SVS) as a carjacked vehicle. Vehicles in the SVS are automatically sent to the Pittsburg PD's Automated License Plate Reader (ALPR) system. Computer-controlled cameras mounted to officers' squad cars scan surrounding vehicles during patrols and alert the officers to any vehicles of interest, such as those registered in the SVS.

On April 25, five days after M.H.'s last report, Officer Alexander Molina, on patrol in a marked police cruiser, chanced upon the stolen Range Rover on Buchanan Street. His cruiser's ALPR flagged the Range Rover as a "felony vehicle." Dispatch informed Officer Molina that the vehicle was listed on the SVS as carjacked, and that defendant was likely to be armed. Officer Molina made a U-turn and set off after the Range Rover. The police cruiser's dashcam captured the Range Rover as it pulled into a strip mall and, after a few turns, pulled into a parking space. Officer Molina stopped just behind the Range Rover, blocking it in, and turned on his lights and siren. Defendant opened the driver side door of the Range Rover the moment it came to a stop and, ignoring Officer Molina's command to stop, took off in headlong flight. Officer Molina gave chase, gun drawn. Defendant threw an object from his

waistband over a fence during the pursuit and surrendered shortly thereafter. Officers searched the area and found a loaded Glock with an extended magazine where defendant had abandoned the object from his waistband. A folded one-dollar bill with suspected methamphetamine was found on defendants' person, and his cell phone was found in the Range Rover.

**ANALYSIS**

Defendant argues that police lacked reasonable suspicion when they seized him and seeks to suppress all fruits of that seizure and any subsequent search. He contends, *first* that the Pittsburg PD erred when they entered the Range Rover into the SVS, and *second* that Officer Molina wrongly seized defendant when, in reliance on the purportedly erroneous SVS record, he parked his cruiser behind the Range Rover and ordered defendant to stop.

Defendant's argument fails for four separate reasons. Any one failure, standing alone, is fatal to his motion.

*First*, defendant lacks standing to press a Fourth Amendment claim because he did not have a legitimate expectation of privacy as the driver of a stolen car. According to the Supreme Court:

> Since the decision in *Katz v. United States* it has been the law that capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable.

*Minnesota v. Olson*, 495 U.S. 91, 95 (1990) (cleaned up). Defendant's argument — that the driver of a stolen vehicle enjoys a legitimate expectation of privacy in that vehicle — was expressly rejected by the Supreme Court in *Rakas v. Illinois*. 439 U.S. 128 (1978). As our court of appeals explained:

> Prior to *Rakas,* the Ninth Circuit mistakenly held that the driver of a stolen car enjoyed the protection of the Fourth Amendment in a search of the car. In *Rakas,* the Supreme Court specifically denounced our holding . . . noting that "several lower courts inexplicably have held that a person present in a stolen automobile at the time of a search may object to the lawfulness of the search of the automobile."

*United States v. Cunag*, 386 F.3d 888, 894 (9th Cir. 2004) (quoting *Rakas*, 439 U.S. at 141 n. 9) (cleaned up).

Here, both the vehicle's primary user, M.H., and registered owner, D.H., reported the car stolen five days before defendant's capture. It does not matter whether defendant took the car at gunpoint or refused to return it after being given permission to drive it, his use was unauthorized all the same. The unauthorized user of a vehicle does not have a legitimate expectation of privacy in that vehicle. *United States v. Thomas*, 447 F.3d 1191, 1199 (9th Cir. 2006) (unauthorized driver of a rental car did not have standing to challenge a search of the vehicle). Defendant therefore lacks standing to challenge the search of the vehicle.

*Second*, defendant's attempt to suppress the firearm fails because he abandoned it before he was seized. *California v. Hodari D.* is on point. 499 U.S. 621 (1991). There, a group of teenagers took off in headlong flight when they saw police driving towards them. The officers gave chase, and the defendant tossed away a rock of crack cocaine just before an officer grabbed him. *Id*. at 624. The Supreme Court held that the discarded drugs were not a fruit of a seizure because defendant had not been "seized" until officers physically captured him, *after* he abandoned the drugs. In sum, "[s]ome form of touching or submission is [ ] required." *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013).

So too here. Officer Molina made a show of force (sirens, lights, a drawn gun, and commands to stop), and defendant failed to yield, instead taking off in headlong flight. He abandoned the evidence he now seeks to suppress during his period of flight, before he surrendered to Officer Molina. Evidence abandoned prior to seizure cannot be suppressed as the fruit of that seizure.

Defendant responds that he was "seized" the moment Officer Molina stopped his car behind the Range Rover, blocking the car in the parking space. Not so. The police cruiser's dashcam video belies the notion that defendant's decision to park his car constituted "submission" to Officer Molina's show of force, akin to a typical vehicle stop. Defendant pulled the Range Rover into the parking spot of his own volition, well before Officer Molina made any show of force. Officer Molina pulled his cruiser in behind the Range Rover and

4

turned on his sirens *after* defendant had pulled into the parking spot and opened his driver door. By the time Officer Molina had a chance to open his cruiser door and give his first command ("Hey man, stop!"), defendant was in a running gait. There was no seizure because there was no touch or submission.

Nor would it matter if Officer Molina's obstruction of the Range Rover's exit *did* constitute an initial seizure. "A seizure is a single act, and not a continuous fact." *Hodari D.*, 499 U.S. at 625. Justice Scalia explained in the principal opinion in *Hodari D.*:

> To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity. If, for example, [the officer] had laid his hands upon [the defendant] to arrest him, but [the defendant] had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest.

*Hodari D.*, 499 U.S. at 625 ("A ship still fleeing, even though under attack, would not be considered to have been seized as a war prize."). If defendant *had* been seized by Officer Molina at the parking space (he was not), he would have entered a period of fugitivity the moment he fled. The gun, in turn, would have been abandoned during that period of fugitivity, prior to his second seizure. As in Justice Scalia's hypothetical, the disclosure of defendant's gun would not have been made "during the course of an arrest," and would not be subject to suppression.

*Third*, Officer Molina had reasonable suspicion to stop defendant. The Fourth Amendment permits investigatory stops and seizures where an officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Our court of appeals has laid out the standard as follows:

> Reasonable suspicion is defined as a particularized and objective basis for suspecting the particular person stopped of criminal activity. The reasonable-suspicion standard is not a particularly

5

> high threshold to reach.  Although a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.  Reasonable suspicion is a commonsense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.  Protection of the public safety justifies such an approach.  When reviewing an officer's reasonable suspicion, we must look at the totality of the circumstances.

*United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (cleaned up).  Both the registered owner and authorized user of the Range Rover reported that defendant had stolen the car.  The car's license plate was entered into the Pittsburg PD's Stolen Vehicle System and Automated License Plate Reader system.  Those systems alerted Officer Molina that the car was stolen.  On those facts, Officer Molina had more than reasonable suspicion to conduct a stop of the vehicle and its driver.

Defendant asserts that Officer Molina lacked reasonable suspicion because "the alleged victim ad [*sic*] reported at least five times that Mr. Jeffrey had her permission to drive the car," and the Pittsburg PD therefore "knew that the car-jacking report was false" (Dkt. No. 17 at 6).

M.H. did not report that defendant "had her permission to drive her car" at the time of his arrest (Dkt. No. 17 at 6).  On April 19, she reported that she had initially given him permission to drive her car, but that he had failed to return it, thereby exceeding the scope of that consent.  On April 20, meanwhile, she provided a more detailed report, wherein she alleged that she handed over the keys to the car only after defendant brandished a firearm.  There is some tension between the two reports:  the first, vague account provided on April 19 described a theft, while the second, more detailed report the next day suggested an armed carjacking.  That tension is reconcilable.  In both accounts,  M.H. handed over the keys to her car, never to see it again.  The second report clarified that her initial "consent" was won with a gun.  As Judge Brian Haynes explained during defendant's state court proceedings, "someone who is not in the business of law enforcement may not know there is a real difference when someone is stealing your car or someone [is] carjacking you . . . what obviously was most important[] to

6

her was her car was gone, and she wasn't getting it back" (Dkt. No. 17-1 at 71). The most important fact remained constant across all of M.H.'s reports: Defendant had taken her car and refused to return it.

At the investigation stage, moreover, questions of victim credibility fall within the discretion of the police. Corporal Riddick, who took down M.H.'s April 20 account of the carjacking at gunpoint, was aware of the April 19 report and the omissions therein. Corporal Riddick explained her decision to enter the car into the SVS in a sworn declaration in support of the government's opposition:

> Despite these questions about her credibility, M.H. was consistent in all her interactions with the police stating that Mr. Jeffrey had possession of her car and was not returning it to her. Given this consistency and the specificity of her statements regarding the car, Officer Sears and I determined that the car should be entered into the Stolen Vehicle System ("SVS") so that law enforcement can recover the vehicle.
>
> [ . . . ]
>
> Officers can enter vehicles in the system as either "STOLEN" or "FELONY." M.H.'s car was entered as a "FELONY" vehicle due to her report of a carjacking. Identifying the stolen vehicle in the SVS as being the subject of a suspected carjacking and that Mr. Jeffrey was armed was important from an officer safety perspective so that any officer who located the car would be aware that the driver could be armed.
>
> Entry into the SVS as a "STOLEN" vehicle also would have been appropriate even without the carjacking allegation because Mr. Jeffrey's unauthorized possession of the car would render it stolen.

(Dkt. No. 22-1 at 2-3). Corporal Riddick's decision to credit M.H.'s report and enter the vehicle into the SVS, despite the tensions in her story, constituted an appropriate exercise of police discretion, as did the decision to list the vehicle as "FELONY," rather than "STOLEN."

*Finally*, even if a Fourth Amendment violation *had* occurred (it did not), the facts here would not warrant exclusion. The Supreme Court has explained:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and

7

> sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter *deliberate, reckless, or grossly negligent conduct*, or in some circumstances recurring or systemic negligence.

*Herring v. United States*, 555 U.S. 135, 144 (2009) (emphasis added). In *Herring*, police called in a warrant check on the defendant, were informed by deputies in a neighboring county that there was an active arrest warrant for him, arrested him on that ground, and found a gun and drugs during a search incident to the arrest. As it turned out, however, the warrant had been recalled five months earlier — the sheriff's office that flagged the warrant had been negligent in maintaining its warrant database. Writing for the majority, Chief Justice Roberts explained that while a Fourth Amendment violation had occurred because of that negligence, the officers' negligent conduct was "not enough by itself to require the extreme sanction of exclusion[:]"

> "If the police have been shown to be *reckless* in maintaining a warrant system, or to have *knowingly made false entries* to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation."

*Id.* at 140, 146 (emphasis added). The facts here fall short of even the negligence at issue in *Herring*: The Range Rover's entry in the SVS was the result of a reasonable credibility determination by Officer Riddick. Defendant's contrary assertion — that the Pittsburg PD's conduct "r[ose] beyond mere negligence to reckless disregard for the truth" — again rests on the incorrect notion that "the alleged victim ad [*sic*] reported at least five times that Mr. Jeffrey had her permission to drive the car" (Dkt. No. 17 at 6).

**CONCLUSION**

For the foregoing reasons, defendant's motion to suppress is **DENIED**. There is no material dispute of fact that could change the outcome of this order, so there is no need for an evidentiary hearing (and none was requested).

**IT IS SO ORDERED.**

Dated: February 2, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE